Thank you, your honors. My name is David Ness. I'm with the Federal Defenders in Montana, and I represent the appellant John Doe. The primary issue in this case, I think both the government and the defense agrees, is whether or not confinement at the Swan Valley Youth Academy constitutes custody. We believe that given the conditions under which Mr. Doe is currently confined, that it does, in fact, constitute custody. As I pointed out in the brief, the Swan Valley Youth Academy is a boot camp for delinquent youth. When the youth report to the Swan Valley Youth Academy, their head is shaved, they're required to wear uniforms, their property is limited to three photographs, they can't have any sort of money, they're confined to the campus, their contacts with their family are limited, they can't have any contact with their family for the first 30 days, or they need to have 30 days clear conduct before they can have contact with their family. Even then, their family contact is limited to once per week, to a period of one and a half hours. Their phone calls to the outside are limited to one 10-minute phone call per week. When they first get there, it gradually goes up to a maximum of three telephone calls per week. They're strip-searched. If they leave the campus to go to court, to go to a doctor, anything of that nature, when they get back, they're strip-searched. They're subjected to pat-down searches when they move around the facility. If they move outside, go back in, they're subject to pat-down searches. Their mail is read. The conditions under which they're confined is really no different from any other sort of minimum security type prison. They can't leave, they can't participate in the community. It's a boot camp. In every significant way I can think of, similar to boot camps run by the Bureau of Prisons, which are clearly considered custody by statute. I looked at that statute again, and the shock incarceration program is defined under Section 4046 as a facility with a highly regimented schedule that provides strict discipline, physical training, hard labor, drill, and ceremony characteristic of basic military training. What were you reading from? I'm reading from 18 U.S.C. Section 4046. Similarly, at a boot camp for adults, persons are required to participate in job training, education programs, drug and alcohol counseling. So while I concede that the Swan Valley Youth Academy does in fact have counseling programs available to the participants in the program, nevertheless, those rehabilitation programs are similar to what they have in regular prisons, or similar to what they have in the adult boot camp facilities, which, as I stated clearly, are clearly considered to be custodial operations. Now, the question is, is because the Swan Valley Youth Academy does in fact constitute custody, is Mr. Doe's sentence legal? And we submit that it's not. First, it's not legal because under the sentencing statute, he had to be placed on probation unless he had been adjudicated a juvenile delinquent or been convicted of an offense that would be an offense if he was an adult, which leaves out any sort of status-type offenses such as youth in need of care, running away, minor in possession of alcohol, those sorts of things. Looking at his record, which is all tribal, we submit that he didn't have any juvenile adjudications. He had no prior convictions that would allow the court to sentence him to a term of custody. So even placement in the Swan Valley Youth Academy in the first instance was illegal in that it violated the sentencing statute. Second, even if one assumes that the court could place him into custody, the question becomes, did the sentence that he received, was that sentence, even the custodial sentence, illegal? And again, we maintain it is because what has happened here is the judge has in essence placed him under an indeterminate sentence, placed him on probation for three years, and during the course of his probation forced him to remain in the Swan Valley Youth Academy. The court is allowed to impose conditions on probation. How can we be or why are you confident that these don't satisfy or don't fall within those allowable conditions? Well, the reason why is because a judge can't impose a probationary sentence and as a term of a probationary sentence, sentence someone to custody. They can sentence them to a treatment facility. They can sentence them to a halfway house. They can sentence them to some sort of intermittent confinement, but they cannot in the same breath put someone on probation and then incarcerate them. Well, if we can take the first one, for example, you mentioned the treatment, and the statute specifically says and remain in a specified institution if required for that purpose. So under the statute for probation, you can say the individual has to remain in the institution. Has to remain in the institution, but that still has to satisfy community confinement. I was reading from the other one, the medical, psychiatric or psychological treatment. It's subpart nine. Undergo available medical, psychiatric or psychological treatment, including treatment for drug or alcohol dependency as specified by the court and remain in a specified institution if required for that purpose. Right. But a judge can't, for instance, decide that a prison system would provide the best psychological or psychiatric services and therefore sentence to someone to probation, but then at the same time, for instance, send them to a Federal medical facility as part of the terms of probation, because that constitutes incarceration. Why? I mean, some of you can't do it, but if the statute says that probation can include the requirement that the person remain in a specified institution, is there anything that says a specified institution couldn't be a facility that in other contexts would be used for incarceration? No. You can't in the same breath send someone to probation and then at the same time sentence them as a condition of that probation to a term of incarceration. No, but you can sentence somebody to probation and the probation includes the requirement that the person remain in a specified institution. Yeah, but the specified institution cannot, by its terms, include a prison type facility. By what terms? Point me to something. Where does it say that? Well, by the terms of looking at the Federal sentencing statutes as a whole. And also, I don't – I can't remember the name of the case. It's cited in my brief, I believe, and it's not a Ninth Circuit case. But what the Court held is you can't place someone on probation and then at the same time give them the term of incarceration as part of that probation. A court can – a court can incarcerate someone, a court can place someone on probation, but they can't do both in the context of the same sentence. Well, I hear you. I'm not persuaded because it wasn't said, okay, you go off to Swan Valley for two years or 18 months or any given period. The requirement of probation was to complete the program at Swan Valley. And I'm still not sure why that doesn't qualify as a condition of probation that requires him to remain in the specified institution. And I think the other thing that the Court needs to look at is the actual sentencing statute here, 924A6, I believe it is, that says a person has to be placed on probation. Now, you can't allow a court to get around what that statute clearly says, placing someone on probation, by saying, well, I'm going to place this person on probation because the statute says I have to, but as a term of probation, I'm going to sentence them to a term of custody. That renders the directive of the sentencing statute in this case null. It doesn't say anything. And that's exactly what the Court did here. The Court determined that he would place him on probation because he had to, but then because the Court felt, and I'm not criticizing the judge here for acting with malice or anything. He did outside the authority of the statute, right? So unless anybody has any questions, I'll reserve the remainder of my time. Thank you. If it please the Court, I'm Klaus Richter again from Montana. We have no quarrel with the arguments that, in this case, the juvenile was entitled to probation. That, pursuant to the statute, his tribal record did not make him eligible for having a previous offense and so on, which would justify imprisonment. However, the judge in this case, the lower court, recognized this. The lower court was concerned with the defendant's or the appellant's background. He was concerned with his surroundings and so on. And specifically, he mentioned this a couple of times, placed him on probation in order to help him. One of those conditions of probation was the placement at the Swan River Academy. And the court specifically, specifically mentioned that also, that this is a condition of probation, which is justified by the guidelines and which is justified by the probation statute. It's a condition of probation. I believe it's part of the probation statute. Let me ask you to focus your attention on the probation statute. And it does contain several subparts that would include reference to some form of retention. I'll try to avoid the word custody. But I understand probation can include a limitation on the individual's freedom to go as he pleases. Which one or which multiple subsections do you think is pertinent to the sentence that we have here? Under this one, Your Honor, it would be subsection 9 and subsection 11. Both would address this particular problem. Now, there were some questions asked earlier about subsection 9, which he can, as a condition of probation, commit the person to a specified institution for certain treatment, medical, psychiatric or psychological treatment. So certainly under that, it's justified. Also, under subsection 11, that particular subsection states, as a condition of probation, the defendant may be ordered to reside at, participate in the program of a community corrections facility, parentheses, including a facility maintained or under contract to the Bureau of Prisons for all or part of the term of probation. Well, does this really qualify as a community corrections facility? Your Honor, I know that's one of the arguments. The district judge considered it, obviously, by making that a term of the probation or condition of the probation, considered it a community corrections facility. Did he ever use that term in the formal? He didn't use that term. A document doesn't use it. The order doesn't use that term. No, Your Honor. And don't we usually understand community confinement to be more like a halfway house, or something that's located in the community? I mean, Swan Valley is not this individual's community. It is indeed designed to take him out of his community. That's correct, Your Honor. In the Bahe case that's cited by the United States, the defendant, this talked about terms of supervised release, but I submit the concept is the same. In the Bahe case, the defendant was a Navajo Indian person. However, the court made a condition of the supervised release that he reside in a community treatment center in Phoenix, I believe it was, which was removed from the reservation. I respectfully submit, Your Honor, that the term community correction, I'm sorry, the term community treatment center doesn't necessarily mean it has to be in the same community. It's to be differentiated from an actual prison. I think you're right on that. But doesn't it suggest that it's supposed to be in some kind of community, certainly a halfway house, we understand, to follow that category, and that's where somebody's got one step inside and one step outside, has some period of release. They deal with the normal community. This isn't a halfway house that we're talking about here. No, I don't believe it's a halfway house. And to be frank with the court, I'm not quite that familiar with exactly how that place is run. I will certainly take Appellant Counsel's word for it. It does seem, however, that there's different steps involved in the persons that are placed at the academy. Possibly you start out at a certain level. You earn your way into another level. By the time you get to the second, third, or fourth level, you are entitled to leave the facility for, say, employment, for schooling, or whatever. So it does seem that that incorporates basically what could be accomplished within the same community. Unfortunately, in Montana, there isn't necessarily available, and this is what the Bonney case, I think, came close to saying, the required proper or sufficient treatment is not necessarily available in the specific community. This person was from Wolf Point. Basically, the judge thought he would receive better treatment at another facility, at a community residential treatment center. The Bureau of Prisons determines if a person or where a person is placed when they get a prison sentence. So I respectfully submit that certainly, again, differentiates it here. The court specifically, as a condition of probation, considered this placement appropriate. Again, it is a valid condition of probation, and the court did not exceed its authority or misread the statute in any way. Let me ask one other question with regard to the subsection 9, the treatment subsection. And in particular, the order here does make specific reference that the juvenile shall participate in a program for mental health treatment as deemed necessary by the probation officer. Are you aware of whether the probation officer has made any separate determination or has utilized Swan Valley as the source of that mental health treatment in this case?  I can only assume that somewhere within the pre-sentence report, a certain recommendation would have been made to the court, which we're not privy to. Those only go to the court. It's pretty clear from the record that the judge sent this young man for treatment. What is not clear to me from the record is what kind of facility Swan Valley Youth Academy is. Is it a treatment facility? Is there any description in the record as to what it is? There's none in the record, Your Honor, no. There was some argument during the dispositional phase, and appellant's counsel mentioned and made some short comments about the facility, but there's nothing really in the record which described exactly what the facility is. There's nothing in the record which exactly described what programs are available and so on. No, Your Honor, there's not. I will respectfully submit that unless there's further questions for the consideration of the court. Thank you. Thank you. Just very briefly, I want to add three points. One, I think it's important for the court to focus on the actual language of the sentencing statute here. It says that a youth with no prior conviction shall be sentenced to probation on appropriate conditions and shall not be incarcerated unless the juvenile fails to comply with the condition of probation. That seems to indicate that even as a condition of probation, the juvenile under this statute cannot be incarcerated. Did you present or, I'm sorry, did the appellant present any evidence as to the type of facility this is? Your Honor. And specifically that it is not a treatment facility. Your Honor, I argued to the court that this was custody. The argument was fairly brief. I think that the court's fairly familiar with what Swan Valley Youth Academy is. No, I'm not. You mean the district court? The district court. I do have materials. For instance, I have a cadet handbook. I'm asking what is in the record so that we can determine whether this is a treatment facility and, therefore, the confinement of this individual at the treatment facility for treatment comes within the statute. I think the only thing that is in the record is my objection where I state this is a boot camp facility. It constitutes custody or incarceration. I don't think anybody went into further detail than that in this record. Well, a boot camp facility may be a form of treatment, whether we agree with it or not. Isn't that true? I suppose if they could go home. By the way, I went into a boot camp, and while I wasn't free to leave, I didn't think I was in custody. I should add, in the military. Sure. I suppose in some instances it could be, depending upon what treatment is available and things of that nature. The only other two points I'd make is Mr. Richter indicated that juveniles are free to leave this facility after they rise up through the ranks, so to speak. I would point out that, and again, this isn't in the court record, but the juveniles can apply for 12-, 24-, or 48-hour furloughs when they reach the transition phase. But they're not free to just go out and work or to go out and go to school. But that's not inconsistent with a halfway house concept or other treatment facilities where it's a privilege and people are reintroduced to the community under controlled circumstances. You do agree, I take it, that at a certain point in the program there is interaction or can be interaction between persons who have been assigned to this facility and the outside world. In the context of what you may term as furloughs, in a halfway house situation, for the most part people are obligated to go work. They're obligated to go to school. And the only third point I would make, I submitted a notice of supplemental authority, and that dealt with a young man that was sentenced for burglary, legally given a custodial sentence, and sent to this same institution. There's no differences, there's no different sides to the institution, and so it just seemed a little inconsistent that one juvenile sent to custody is sent to this same place, while at the same time it's not supposed to be a custodial type situation. Well, there have been cases, I think all of them, I'm aware of, are district court cases. But there's been discussion of, in the context, I think, of community correctional facilities, that in fact you can wear two hats. The same facility can be both someplace you're specifically assigned for custody purposes and someplace that you're assigned to as a halfway house or community facility. In the halfway houses, that's been traditionally the case, although I note that the Department of Justice has stopped doing that now. Thank you. Thank you. We thank both counsel for your excellent arguments in all of the cases that you've been before us. And this case is submitted. Thank you.
judges: Browning, Alarcon, Clifton